UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ASHLEY BIRD, individually and on behalf of all
others similarly situated; TYLER DVORNSKI,
individually and on behalf of all others similarly
situated; and TIFFANY HUGHES, individually
and on behalf of all others similarly situated,

                          Plaintiffs,

v.                                                          6:25-CV-0214
                                                            (GTS/MJK)
PETMED EXPRESS, INC.,

                          Defendant.
_____

APPEARANCES:                              OF COUNSEL:

EAST END TRIAL GROUP LLC                  KEVIN W. TUCKER, ESQ.
   Counsel for Plaintiffs                 HELEN CHANDLER STEIGER, ESQ.
6901 Lynn Way, Suite 503                  JESSICA LIU, ESQ.
Pittsburgh, PA 15208                      KAYLA CONAHAN, ESQ.
                                          KEVIN ABRAMOWICZ, ESQ.
                                          STEPHANIE MOORE, ESQ.


SULTZER & LIPARI, PLLC                    JOSEPH LIPARI, ESQ.
   Counsel for Defendant                  JEREMY FRANCIS, ESQ.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this fraudulent misrepresentation and advertising action

filed by Ashley Bird, Tyler Dvorski, and Tiffany Hughes ("Plaintiffs") against PetMed Express,

Inc. ("PetMed" or "Defendant"), is Defendant's motion to dismiss Plaintiff's Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 20.)  For

the reasons set forth below, Defendant's motion is granted in part and denied in part such that all of Plaintiffs' claims are dismissed, albeit some without prejudice.

I.    **RELEVANT BACKGROUND**

    A.    **Plaintiffs' Amended Complaint**

Plaintiffs filed their original Complaint on February 14, 2025.  (Dkt. No. 1.)  Defendant filed a motion to dismiss the Complaint on April 18, 2025, in lieu of an Answer, but after Plaintiffs filed an Amended Complaint on May 9, 2025, Defendant withdrew that motion and requested leave to file a renewed motion addressing the Amended Complaint.  (Dkt. Nos. 16, 17, 18.)  That request was granted on May 19, 2025, and Defendant filed its renewed motion to dismiss on May 30, 2025.  (Dkt. Nos. 19, 20.)

In the Amended Complaint, Plaintiffs assert five claims: (1) a claim that Defendant violated the New York Consumer Protection from Deceptive Acts and Practices Act (N.Y. Gen. Bus. L. § 349) as to Plaintiff Bird and Plaintiff Dvornski and on behalf of a proposed New York class; (2) a claim that Defendant violated the New York False Advertising Law (N.Y. Gen. Bus. L. § 350) as to Plaintiff Bird and Plaintiff Dvornski and on behalf of a proposed New York class; (3) a claim that Defendant violated the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200) as to Plaintiff Hughes and on behalf of a proposed California class; (4) a claim that Defendant violated the California False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17200) as to Plaintiff Hughes and on behalf of a proposed California class; and (5) a claim that Defendant violated the California Consumers Legal Remedies Act ("CLRA") (Cal. Civil Code § 1750) as to Plaintiff Hughes and on behalf of a proposed California class.  (Dkt. No. 16.)  All of these claims are based on purchases Plaintiffs made of certain pet medication

products through Defendant's website.  (*Id.*)  Specifically, Plaintiffs allege that Defendant used a false "regular" price and "sale" price to mislead consumers into believing that they were receiving a discount on the relevant products when in fact the "regular" price was an artificially inflated price that Defendant never actually charged consumers and resulted in Plaintiffs unknowingly paying more for the products.  (*Id.*)  Plaintiffs also additionally request injunctive relief enjoining Defendant from continuing the allegedly unlawful practices.  (*Id.* at 43.)

### B.     Parties' Briefing on Defendant's Motion to Dismiss

#### 1.     Defendant's Memorandum of Law

Generally, in its motion to dismiss, Defendant makes five arguments.  (Dkt. No. 20, Attach. 1.)  First, Defendant argues that Plaintiffs have not established Article III standing.  (*Id.* at 11-16.)  More specifically, Defendant argues that the named Plaintiffs have not plausibly alleged that any product they actually purchased was deceptively priced because the only specific allegations of pricing history that Plaintiffs provided were for products other than those that Plaintiffs actually purchased, and there is no basis for the Court to assume based on a sample of a few different products that the ones Plaintiffs specifically purchased had been subject to some type of unlawful false discount scheme.  (*Id.*)  Defendant further argues that this failure is fatal to Plaintiffs' ability to pursue their claims because, even if some unknown potential class member might have purchased the specific products highlighted in the Amended Complaint, the named Plaintiffs must have standing independently and cannot rely on the standing of yet unidentified persons who are not currently part of this action.  (*Id.*)

Second, Defendant argues that the alleged "strikethrough" prices on Defendant's website are not actionable representations about the products under either the relevant California laws or the New York General Business Law. (*Id.* at 16-18.)

Third, Defendant argues that Plaintiffs Bird and Dvornski have failed to adequately plead statutory standing for their claims under New York law because they have not alleged how they have been harmed by the allegedly deceptive "strikethrough" prices on Defendant's website. (*Id.* at 18-25.) More specifically, it argues that (a) Plaintiffs' argument that they would not have purchased the product if not for the perceived discount does not show actionable harm because it impermissibly combines the alleged deception itself with the injury (i.e., lack of an actual bargain), (b) Plaintiffs' argument that they did not get the benefit of the promised bargain has not been recognized to be an injury in the absence of any defect or inferior quality related to the product itself, (c) Plaintiffs' argument that they paid a premium price also does not suggest any actionable harm because they have not alleged that Defendant made any misrepresentations connected to any unique quality or value of the relevant products for which they paid a premium, or that the product they received was worth less than the amount they paid, and (d) Plaintiffs' argument that they could have paid less for the product from another retailer is also not an actionable injury because, again, they have failed to allege that they did not receive what they paid for and have not alleged that Defendant's conduct somehow prevented them from viewing other retailers' offers before they made their purchase. (*Id.*)

Fourth, Defendant argues that Plaintiff Hughes has failed to plead the required elements of her claims under California law, which are subject to the heightened pleading requirements of

Fed. R. Civ. P. 9(b), because she has failed to include with the required specificity any allegations regarding the pricing scheme of the product she actually purchased. (*Id.* at 25-28.)

Fifth, Defendant argues that, in addition to lacking Article III standing in general, Plaintiffs lack standing specifically to pursue injunctive relief because they have not plausibly alleged that they will suffer any future harm in that there is nothing to suggest that they would purchase products from Defendant in the future or that they will again be deceived by any such false bargains now that they are aware of the supposedly deceptive practice. (*Id.* at 29-31.)

## 2.    Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiffs make four arguments. (Dkt. No. 21.) First, Plaintiffs argue that they have standing under both Article III and New York law because they have sufficiently alleged that they each purchased a product from Defendant and paid money that they would not have paid but for Defendant's false discount representation. (*Id.* at 10-19.) More specifically, as to Article III standing, Plaintiffs argue that they (a) have alleged that they would not have overpaid for the relevant products by buying from Defendant had it not been for the false reference prices, (b) have included screenshots to show that such false reference prices were shown, and (c) have cited to other cases in which similar reliance on false reference prices were sufficient to confer standing. (*Id.*) Plaintiffs further argue that Plaintiffs Dvornski and Bird have statutory standing under New York law because they have alleged that they did not receive the full value of their purchase (and instead wrongly paid a premium both as to the minimum advertised price ("MAP") set by the manufacturers and as to the prices charged by Defendant's competitors) as a result of Defendant's materially misleading practice. (*Id.*)

5

Second, Plaintiffs argue that Defendant's misrepresentations regarding reference prices are misleading and actionable under both New York and California law, and other courts have recognized that such false statements regarding the "original" price are, in fact, actionable. (*Id.* at 19-27.)

Third, Plaintiffs argue that the allegations meet the heightened pleading standards of Fed. R. Civ. P. 9(b) as to Plaintiff Hughes' California claims because they have stated with particularity the circumstances that they allege constitute the fraud in this case, i.e., regarding the inflated false reference prices and the deceptive "discounts." (*Id.* at 27-29.)

Fourth, Plaintiffs concede and do not oppose dismissal of their claims for injunctive relief due to a failure to allege a likelihood of future harm occurring, particularly in light of the fact that Defendant ceased using false reference prices in or around June 2024 after a separate lawsuit against it. (*Id.* at 29.)

### 3.    Defendant's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant makes five arguments. (Dkt. No. 22.)  First, Defendant argues that Plaintiff has failed to establish Article III standing because they have not pleaded that any product they actually purchase was falsely priced. (*Id.* at 6-7.)

Second, Defendant argues that Plaintiff has also failed to plead statutory standing related to their New York claims because none of the damages theories they assert are sufficient to confer standing. (*Id.* at 8-9.)

Third, Defendant argues that the relevant prices do not constitute an actionable misrepresentation about the purchased products. (*Id.* at 9-11.)

Fourth, Defendant argues that the allegations put forth related to Plaintiff Hughes' California law claims do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b) because she has not provided relevant allegations related to the specific product that she alleges she purchased.  (*Id.* at 11-14.)

Fifth, Defendant repeats its argument that Plaintiffs lack standing to pursue injunctive relief, noting that Plaintiffs have now conceded that such claims must be dismissed.  (*Id.* at 14.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standards Governing a Motion Pursuant to Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia*, *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of

subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . .  But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

**B.    Legal Standards Governing a Motion Pursuant to Fed. R. Civ. P. 12(b)(6)**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on de novo review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such fair notice has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

9

on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 Moore's Federal Practice § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the conceivability of an actionable claim, the Court clarified, the "fair notice" standard turns on the plausibility of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," id., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a

11

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

## III.    ANALYSIS

### A.    Whether the Named Plaintiffs Have Article III Standing

After careful consideration, the Court answers the above question in the affirmative as to Plaintiff Bird, but in the negative as to Plaintiff Dvornski and Plaintiff Hughes for the following reasons.

To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact "must be concrete and particularized, as well as actual or imminent," rather than "conjectural or hypothetical." *Carney v. Adams*, 592 U.S. 53, 58 (2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo*, 578 U.S. at 338. "In the context of a class action like the case at hand, a plaintiff must show 'that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Kell v. Lily's Sweets, LLC*, 23-CV-0147, 2024 WL 1116651, at *3 (S.D.N.Y. Mar. 13, 2024) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 [1996]). "[A]n allegation that a plaintiff would not have purchased a product or would not have paid the same amount [in the absence of the defendant's allegedly unlawful actions] comfortably satisfies the injury-in-fact prong of Article III standing."

*Rappaport v. Under Armour, Inc.*, 24-CV-7558, 2025 WL 2624977, at *3 (E.D.N.Y. Sept. 11, 2025) (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 [S.D.N.Y. 2021]); *accord Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562, 577 (S.D.N.Y. 2023); *DaCorta v. AM Retail Grp.*, 2018 WL 557909, at *6 (S.D.N.Y. Jan. 23, 2018); *see also Nunez v. Saks Inc.*, 771 F. App'x 401, 402 (9th Cir. 2019) (finding Article III standing where the plaintiff alleged "that he purchased [the product] and that he would not have purchased the [product] but for his reliance on the allegedly fictitious inflated "Market Price" on the [product's] price tag").

As an initial matter, a court "need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 146 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 686). In this case, the Court declines to credit Plaintiffs' allegations that "PetMeds employed false references prices for every product that PetMeds sold in its Online Store from at least December 2009 to June 2024," including the specific products purchased by the three Plaintiffs, which are made "upon information and belief." (Dkt. No. 16, at ¶¶ 54, 80, 98.) Such expansive allegation is simply not supported by the other factual allegations presented.

Plaintiffs provide historical pricing data comparing the allegedly false reference price with the "sale" price from various dates related to four products: (a) Bravecto 4-10 (1-pack) from July 2018 to June 2024; (b) Revolution Plus 3-6 from September 2020 to June 2024; (c) Novox 25mg from September 2020 to April 2023; and (d) Proin 25mg (60-count) from December 2009 to February 2024. However, as will be discussed below, none of these four specific products are those that any of the named Plaintiffs actually purchased as a basis for their claims, but rather different formulations or variations of those products. In other words, although the above

13

allegations might plausibly suggest that Defendant applied a false discount to four of its products, that fact does not lead to a reasonable inference that such discount was applied to *all* of the approximately 15,000 products it offered for sale on its online store, or that any "original" strike-through price related to the sale of all of Defendant's products was fraudulently inflated. (Dkt. No. 16, at ¶ 6.)  As a result, Plaintiffs' speculative and conclusory allegation that all of the products sold on Defendant's online store were subject to the alleged false discount practice does not suffice to establish standing as to the products specifically purchased by the named Plaintiffs.[1]

Turning to Plaintiffs' other allegations, they allege that they would not have "overpaid" for the relevant products they bought and would have in fact purchased the product from a competitor for less had they been aware of the misleading nature of the use of strike-through "regular" prices and "sale" prices.  (Dkt. No. 16, at ¶¶ 133-34, 136-37, 148-49, 151-52, 171-72, 183-84, 202-03.)  However, the only Plaintiff to allege facts plausibly suggesting that he or she purchased a product to which the alleged false discount pricing scheme was applied is Plaintiff

---

[1]    This rationale applies equally to Plaintiffs' allegation that the advertisements for the relevant purchased products "always mirrored" the advertisements for other versions of the same medication based on their "investigations in PetMeds' marketing practices from December 2009 to June 2024" and on information and belief.  (Dkt. No. 16, at ¶ 89.)  No facts support such a broad and conclusory allegation because, as will be discussed, Plaintiffs have failed to plausibly suggest that, with the exception of the product purchased by Plaintiff Bird, a false discount was ever advertised related to the specific products that Plaintiffs purchased.  Indeed, in providing allegations and screenshots related to other versions of those products, Plaintiffs acknowledge that, when using the resource through which they obtained those screenshots and factual information included in their Amended Complaint, they "could not locate PetMeds' advertisement" for the specific products purchased by Plaintiff Dvornski and Plaintiff Hughes. (Dkt. No. 16, at ¶¶ 42, 88.)  If Plaintiffs could not locate any advertisements for those products, there is no apparent factual basis for their allegation that the advertisements for those same products "always mirrored" those for other versions of the products.

Bird.  (Dkt. No. 16, at ¶ 67 [showing that, on February 22, 2024, a three-pack of Revolution Plus 11-22 was priced at $91.00, with a strike-through "regular" price of $130.00 and a notation that the product was "30% off today"]).[2]  The allegation by Plaintiff Dvornski regarding an advertisement from September 30, 2023, does show a strike-through "regular" price and a sale price and an indication that the Bravecto Chews were "30% off today," but that advertisement notably does not specify to which version of the Bravecto product that price scheme applies, despite the fact Plaintiff Dvornski alleges that he specifically purchased a 1-pack of Bravecto 44-88.[3]  (Dkt. No. 16, at ¶ 41.)  Plaintiff Dvornski also alleges that he "purchased Bravecto 44-88 on September 19, 2023 after viewing PetMeds' offer, as depicted in Figure 3, and agreeing to its terms," citing to an exhibit purporting to support that fact.  (Dkt No. 16, at ¶ 55.)  However, as already discussed, Figure 3 does not show the offer for Bravecto 44-88 specifically, and the cited exhibit shows only that Plaintiff Dvornski ordered Bravecto 44-88 at a price of $71.99; it does not show anything regarding a "regular" price or discount.  (Dkt. No. 16, Attach. 2.)  Similarly, the allegation by Plaintiff Hughes regards an advertisement from July 14, 2022, showing a strike-through regular price, a sale price, and the notation of "30% off today," but that advertisement is notably for the 25mg, 30-count version of Novox Carprofin, not the 75mg, 60-count version that

---

[2]      An exhibit to the Amended Complaint indicates that Plaintiff Bird did not pay the $91.00 reflected in this advertisement (which was from a different date than when she purchased it), but rather that she paid $85.48 when she purchased it on or about March 6, 2024.  (Dkt. No. 16, Attach. 5.)

[3]      The screenshot of this advertisement itself appears to suggest that there were in fact five different versions of the Bravecto product available, and there is nothing other than Plaintiffs' conclusory allegations to suggest that the shown discount applied to all of those versions rather than the one that is specifically documented in the screenshot (which Plaintiffs themselves acknowledge was for Bravecto 4-10, not Bravecto 44-88).

Plaintiff Hughes alleges that she purchased. (Dkt. No. 16, at ¶ 87.) Also as above, Plaintiff Hughes alleges that she made her purchase of Novox 75mg "on June 24, 2022 after viewing PetMeds' offer, as depicted in Figure 10, and agreeing to its terms," but Figure 10 does not show anything regarding Novox 75mg and the referenced exhibit shows only that Plaintiff Hughes ordered Novox 75mg at a price of $53.16, but does not show anything regarding a "regular" price or discount. (Dkt. No. 16, at ¶ 99; Dkt. No. 16, Attach. 7.)

For the reasons discussed above, Plaintiffs provided factual allegations plausibly suggesting the use of misleading reference prices related to only the specific product purchased by Plaintiff Bird, and thus they have plausibly alleged that only Plaintiff Bird would not have purchased the product from Defendant or paid the relevant amount in the absence of Defendant's use of false reference prices (as the other Plaintiffs have not plausibly alleged that they were subject to the false reference prices related to the product they actually purchased). On that basis, the Court finds that only Plaintiff Bird meets the requirements for constitutional standing under the circumstances. The claims asserted by Plaintiff Dvornski and Plaintiff Hughes, including all claims based on the relevant California statutes, must be dismissed without prejudice for lack of subject-matter jurisdiction.

**B.    Whether Plaintiff Bird Has Statutory Standing Pursuant to N.Y. Gen. Bus. L. §§ 349 and 350**

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendant's memoranda of law. *See supra,* Parts I.B.1 and I.B.3 of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, the reasons presented by Defendant).

16

The essential elements for stating a claim under either N.Y. Gen. Bus. L. § 349 or § 350 are identical: "a plaintiff must allege that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 [2d Cir. 2000]).  The existence of a qualifying injury is therefore an essential component of the relevant claims.  "To plead actual injury under either statute, 'a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Binder v. Premium Brands Opco LLC*, 23-CV-3939, 2024 WL 2978506, at *6 (S.D.N.Y. June 11, 2024) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 [2d Cir. 2015]).  "New York law does not recognize 'an injury based on [a defendant's] deception itself—the fact that the [p]laintiff was deceived is not, standing alone, an actual injury.'" *Binder*, 2024 WL 2978506, at *6 (quoting *Belcastro v. Burberry Ltd.*, 16-CV-1090, 2017 WL 744596, at *3 [S.D.N.Y. Feb. 13, 2017]).  Nor does New York law recognize "'an injury based on the subjective value assigned to a missing bargain' because it 'impermissibly combines the deception (the appearance of a bargain) with injury (there was no actual bargain).'" *Binder*, 2024 WL 2978506, at *6 (quoting *Belcastro v. Burberry Ltd.*, 16-CV-1080, 2017 WL 5991782, at *3-4 [S.D.N.Y. Dec. 1, 2017]).  "Instead, a plaintiff 'must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that the use of the product adversely affected plaintiff's health.'" *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (quoting *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 677 [S.D.N.Y. 2012]).

To the extent that Plaintiffs' Amended Complaint appears to suggest that they have alleged injury based on failing to receive the expected bargain created by the use of the false "original" prices, such allegations do not plausibly suggest a cognizable injury under New York law, as discussed above. *Binder*, 2024 WL 2978506, at *6; *see Binder v. Michael Kors (USA) Inc.*, 23-CV-3941, 2024 WL 3227943, at *4 (S.D.N.Y. June 28, 2024) (noting courts routinely reject claims based on failure to allege injury where the plaintiff's theory is based on the failure to receive a bargain they expected unless they are able to allege some sort of defect or inferior quality in the product); *Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d 562, 581-82 (S.D.N.Y. 2023) (rejecting argument of statutory standing based on falsified original price because "disappointed bargain-hunters do not suffer any actual injuries or damages simply because they did not get as good a deal as they expected").

In their opposition memorandum of law, Plaintiffs proffer two other theories of injury based on their allegations in the Amended Complaint, both of which are premised on the assertion that Defendant's deceptive practice caused them to pay a premium (i.e., overpay) for the relevant products. First, Plaintiffs argue that they were made to pay a premium because the false "original" prices permitted Defendant to charge Plaintiffs more than the MAP price of the products set by the manufacturer. (Dkt. No. 21, at 16-17.) Second, Plaintiffs argue that they were made to pay a premium also because the false "original" prices permitted Defendant to charge Plaintiffs more than other retailers charged for those products without the use of false reference prices. (*Id.* at 17-19.)

New York law does recognize a "price premium" theory of injury "whereby a plaintiff claims to have paid more for the product than he or she would have if the defendant did not

18

engage in allegedly deceptive practices." *Colpitts*, 527 F. Supp. 3d at 576-77 (citing *Orlander*, 802 F.3d at 302; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 [S.D.N.Y. 2020]). "To properly allege a price premium injury, plaintiff must show 'either that because of a misrepresentation the plaintiff received a good worth less than what he paid for it, i.e., a good of inferior quality, or that because of a misrepresentation the plaintiff paid an inflated price.'" *Binder*, 2024 WL 2978506, at *7 (quoting *Burberry*, 2017 WL 5991782, at *4). "To establish an overpayment price premium theory, 'a plaintiff must allege that he overpaid by some *objective measure*, and not just that he felt, subjectively, that he overpaid.'" *Binder*, 2024 WL 2978506, at *7 (quoting *Burberry*, 2017 WL 5991782, at *4) (emphasis in original).

Courts within the Second Circuit have generally found that a plaintiff is not required to identify the price of a competing product in order to allege a price premium injury sufficient to withstand a motion pursuant to Fed. R. Civ. P. 12(b)(b). *See Colpitts*, 527 F. Supp. 3d at 576-77 (collecting cases). The Court notes, however, that such findings seem to have been rendered exclusively in cases where (a) the basis for the "premium" is some unique advertised quality of the product that, in fact, was misleading or untrue, and (b) the absence of that quality diminished the value of the product itself. *See Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (finding failure to identify competing products to establish the premium was not fatal at the motion to dismiss stage in case where the alleged deceptive statement was that the orange juice was "natural" despite the presence of trace amounts of an herbicide); *Colpitts*, 527 F. Supp. 3d at 571-72 (noting that the deceptive statement that induced the plaintiff to purchase the almonds was related to the implication that the almonds' "smokehouse" flavor came from the actual process of smoking rather than added flavor); *Rodriguez v. Hanesbrands Inc.*, 17-CV-

19

1612, 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018) (noting the deceptive statement was that the hosiery purchased was "run-resistant").

Here, Plaintiffs have not alleged facts plausibly suggesting that Defendant made any misrepresentation as to the actual quality or attributes of the relevant products that would render the products less valuable or desirable. Instead, Plaintiffs' "price premium" theory rests entirely on the representations Defendant made as to the original price of the product. The comparison here is therefore not between a product that was supposed to have a certain quality but did not and a different product that never represented having that unique quality, but rather the same product sold by different retailers for a different price. In the "unique quality" situation, a plaintiff could very reasonably provide plausible allegations that it overpaid for a product when that product failed to meet the expectations of quality or function set by the defendant's advertising; the fact of it lacking that promised quality or function is itself the basis for the plausible suggestion that the plaintiff overpaid for the product because it arguably renders the product itself less valuable. That is not the case here. The fact that Defendant allegedly misrepresented the original price of the products in order to create the illusion of a bargain does not somehow inherently alter the fundamental value or utility of the products to the consumer; Plaintiffs received exactly the products they expected and have not alleged that they were somehow deficient. Thus, the only way in which they can allege that they overpaid for such products is to allege facts plausibly suggesting that the "sale" price they paid as a result of Defendant's misrepresentation was higher than some objective measurement of value, such as the market price. *See Binder*, 2024 WL 278506, at *8 (finding plaintiff failed to plausibly allege a price premium injury based on an overpayment theory because the allegations about

overpayment "fall short of establishing a baseline market price of the products against which to measure the alleged overpayment"); *DeCorta v. AM Retail Grp.*, 16-CV-1748, 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) (noting that"[i]n the absence of facts related to the value o[f] the purchased product, or how the product fell short of what it purported to be, the Amended Complaint only reflects Plaintiff's subjective disappointment," and "without allegations as to the value [of the product], or the unique quality for which the premium was paid, there can be no connection between the misrepresentation and the harm from the product"); *Belcastro*, 2017 WL 5991782, at *4 (finding that the plaintiff had not pleaded a price premium injury related to an inflated "original" price because such theory requires an allegation that the plaintiff overpaid by some objective measure and the plaintiff "does not allege that he purchased products that normally retail for less than he actually paid").

As to the allegations related to Plaintiff Bird (the only Plaintiff with Article III standing), Plaintiffs make a generic allegation that "PetMeds used False Reference Prices from at least 2009 to June 2024 in order to sell its products for more than its competitors and the minimum advertised price ("MAP price") set by the products' manufacturers, and to deter consumers from looking for lower prices elsewhere."  (Dkt. No. 16, at ¶ 7.)  They also allege specifically as to Plaintiff Bird that, "but for PetMeds' use of False Reference Prices, Bird would not have overpaid for Revolution Plus 11-22 on March 6, 2024," and "because PetMeds could not have charged $85.48 for Revolution Plus 11-22 in the absence of the upward pressure of the product's False Reference Price, and because had Bird known PetMeds' 'regular' price for Revolution Plus 11-22 was a False Reference Price, Bird would have purchased Revolution Plus 11-22 from one of PetMeds' competitors that charged less than $85.48, such as those competitors that charged

the MAP price for Revolution Plus 11-22." (*Id.* at ¶¶ 136-37.)  Plaintiffs' allegations that

Plaintiff Bird overpaid and that she would have bought the relevant product from a competitor

that sold that product at a lower price than she paid simply do not plausibly suggest overpayment

based on some objective measurement of value.  Plaintiffs notably do not include any allegations

regarding competitors who sold Revolution Plus 11-22 for a lower price, nor do they allege what

the MAP price of that product was.  Because, as in cases like *Binder* and *DeCorta*, Plaintiffs

have failed to provide any factual allegations plausibly suggesting the baseline market price or

objective value of Revolution Plus 11-22, they have not plausibly alleged that the price Plaintiff

Bird paid was actually an overpayment.

     For the above reasons, Plaintiff Bird has failed to allege facts plausibly suggesting that

she suffered an injury as required for her claims pursuant to N.Y. Gen. Bus. L. §§ 349 and 350.

     **ACCORDINGLY**, it is

     **ORDERED** that Defendants' motion to dismiss (Dkt. No. 20) is **<u>GRANTED</u>** as to

Plaintiff Dvornski and Plaintiff Hughes for lack of subject-matter jurisdiction pursuant to Fed. R.

Civ. P. 12(b)(1), and **<u>GRANTED</u>** as to Plaintiff Bird for failure to state a claim upon which

relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), but **otherwise <u>DENIED</u>**; and it is

further

     **ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 16) is **<u>DISMISSED</u> without**

**prejudice** for a lack of subject-matter jurisdiction as to the claims asserted by Plaintiff Dvornski

and Plaintiff Hughes, and **<u>DISMISSED</u> with prejudice** as to the claims asserted by Plaintiff

Bird.

Dated: January 29, 2026
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge